

IN THE CHANCERY COURT OF UNION COUNTY, TENNESSEE
FOR THE EIGHTH JUDICIAL DISTRICT AT MAYNARDVILLE

TIMOTHY A. WILLIAMS,

    Plaintiff,

v.

STATE FARM FIRE & CASUALTY CO.,

    Defendant.

FILED 1:45 p.m.
20th Day Oct. 2015
Sandra Edmondson, Clerk
By: Cathy Cooper-Dep. C+m

CASE NO.: 6735
JURY DEMAND REQUESTED

## COMPLAINT AND PETITION FOR DECLARATORY JUDGMENT

**COMES NOW** the Plaintiff/Petitioner, Timothy A. Williams (hereinafter, "Mr. Williams" or "Plaintiff"), by and through undersigned counsel, Law Office of James W. Friauf, PLLC, and brings this Complaint and Petition for Declaratory Judgment against the defendant, State Farm Fire & Casualty Co. (hereinafter, "State Farm" or "Defendant") setting forth his claims for relief. Plaintiff further hereby moves the Court to declare the rights, status, and other legal relations of the parties to this litigation pursuant to Tenn. Code Ann. § 29-14-101, et seq. and Tennessee Rule of Civil Procedure 57. In support of his cause, Plaintiff avers unto the Court as follows:

### I. GENERAL FACTS

1. Plaintiff, Timothy A. Williams is a resident citizen of the State of Tennessee, County of Union.

2. Defendant, State Farm Fire & Casualty Co. is a foreign insurance company authorized to write various types of personal and property and casualty insurance,

1

including homeowners' insurance policies, in the State of Tennessee. State Farm is being served with this Complaint and Petition for Declaratory Judgment via the Commissioner of the Tennessee Department of Commerce and Insurance pursuant to Tenn. Code Ann. § 56-2-103.

3. The claims at issue involve a water loss resulting from frozen plumbing that occurred in Union County, Tennessee, and insurance issues related to that loss. Accordingly, jurisdiction and venue are proper.

4. Prior to the water loss at issue, Mr. Williams secured a Homeowners Insurance Policy from State Farm in relation to his primary residence located at 429 Tumbling Run Estate, Maynardville, Tennessee 37807-5046 (hereinafter, "Residence") (policy no. 42-BP-L943-9) (hereinafter, "Policy"). The policy is incorporated herein by reference. A certified copy of the Policy is **attached hereto as Exhibit "1."**

5. The water loss (hereinafter, "Loss") at issue occurred on or about February 21, 2015. Mr. Williams was temporarily away from the Residence at the time of the Loss due to caring for an ill family member.

6. Upon learning of the Loss, Mr. Williams promptly provided notice of the Loss to State Farm.

7. Upon information and belief, the Loss resulted from a power outage during winter weather. The power outage caused loss of heat to the Residence, thereby causing certain plumbing to freeze and burst.

2

8. At all relevant times, Mr. Williams took reasonable measures to maintain heat to the Residence.

9. As a result of the Loss, the Residence was destroyed beyond repair.

10. After Mr. Williams reported the Loss, State Farm hired a claims investigator to inspect the Residence. Upon inspection, the investigator opined to Mr. Williams that the structural integrity of the Residence had been compromised as a result of the Loss.

11. Based upon recommendations by the claims investigator, Mr. Williams retained a structural engineer, Ronald R. Corum, P.E. of Corum Engineering, P.C. (hereinafter, "Corum"), to perform a structural integrity evaluation of the residence.

12. Pursuant to his evaluation completed on or about May 19, 2015, Corum opined, in pertinent part:

> *It is my opinion the water saturated floor trusses and plywood subflooring are damaged beyond repair and should be replaced to ensure the structural integrity of the home.*

13. The claims investigator for State Farm was present for the structural integrity inspection by Corum. Accordingly, the investigator was aware of Corum's findings.

14. Upon information and belief, State Farm was dissatisfied with its investigator's and Corum's conclusions and hired a second structural engineer to perform a structural integrity inspection of the Residence.

3

15. The second structural engineer conducted an inspection of the Residence and declared the structure could be rebuilt on the existing trusses and subflooring.

16. Upon information and belief, as a result of the second structural engineer's report that the Residence could be reconstructed on the existing trusses and subflooring, State Farm denied Mr. Williams' claim to demolish and reconstruct the residence.

17. In light of State Farm's decision not to demolish and reconstruct the Residence, State Farm advised Mr. Williams he would be responsible for mold and mildew remediation at his expense before State Farm would pay to have the residence repaired using the existing trusses and subflooring.

18. State Farm refuses to pay for demolition and reconstruction of the Residence.

19. Mr. Williams stands ready to pay for any mold remediation necessary to protect workers during demolition and/or reconstruction of the Residence. Plaintiff has not yet, however, paid for such remediation because State Farm refuses to pay for demolition and reconstruction of the Residence.

20. State Farm refuses to pay Mr. Williams' claim for loss of use of his residence, responding that, because Mr. Williams has another home he can reside in pending repair of the Residence, it will not pay for expenses necessary for Mr. Williams to maintain his standard of living.

21. After notification that Mr. Williams had retained legal counsel, State Farm intentionally and fraudulently stated by letter dated July 29, 2015 that the, "only known pending item is the completion of Mr. Williams' inventory forms for his damaged personal property as a result of the water. It is my understanding that

4

Mr. Williams is working on the completion of these forms . . . ." (emphasis added). At the time of the July 29, 2015 letter, State Farm knew or reasonably should have known Mr. Williams' property damage claim for destruction of the Residence and Mr. Williams' claim for loss of use of the residence had not been paid.

22. On or about August 13, 2015, Mr. Williams submitted a demand to State Farm that it remit payment for past and ongoing loss of use of the Residence and to begin demolition and rebuilding of the Residence. State Farm failed to honor the demand.

## II. REQUEST FOR DECLARATORY JUDGMENT

23. Plaintiff re-alleges and incorporates by reference each and every averment of paragraphs 1-21 herein, inclusive.

24. As amended by applicable endorsements, the Policy contains the following provisions:

\*\*\*

### DEFINITIONS

8. **"property damage"** means physical damage to or destruction of tangible property, including loss of use of this property.

## SECTION I - COVERAGES

### COVERAGE A – DWELLING

1. **Dwelling.** We cover the dwelling used principally as a private residence on the **residence premises** shown in the **Declarations**.

### COVERAGE C – LOSS OF USE

1. **Additional Living Expense.** When a Loss Insured causes the **residence premises** to become uninhabitable, we will cover the necessary *increase in cost you incur to maintain your standard of living for up to 24 months.* Our payment is limited to incurred costs for the shortest of: (a) the time required to repair or *replace the premises*; (b) the time required for your household to settle elsewhere; or (c) 24 months. This coverage is not reduced by the expiration of this policy.

(emphasis added).

## SECTION I – LOSSES INSURED

### COVERAGE A – DWELLING

We insure for accidental direct physical loss to the property described in Coverage A, except as provided in **SECTION I – LOSSES NOT INSURED.**

6

## SECTION I – LOSS SETTLEMENT

COVERAGE A – DWELLING

1. A1 – Replacement Cost Loss Settlement – Similar Construction.

    a. We will pay the cost to repair or replace with similar construction and for the same use on the premises shown in the **Declarations**, the damaged part of the property covered under **SECTION I – COVERAGES, COVERAGE A – DWELLING**, except for wood fences, subject to the following:

        (1) *until the repair or replacement is actually completed, we will pay only the actual cash value* at the time of the loss of the damaged part of the property, up to the applicable limit of liability shown in the **Declarations**, not to exceed the cost to repair or replace the damaged part of the property;

(emphasis added)

        (2) when the repair or replacement is actually completed, we will pay the covered additional amount you actually and necessarily spend to repair or replace the

7

damaged part of the property, or an amount up to the applicable limit of liability shown in the Declarations, whichever is less;

(3) to receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify us within 30 days after the work has been completed . . .

### DECLARATIONS PAGE

| Coverages & Property | Limits of Liability |
|---|---|
| **SECTION I** | |
| A  Dwelling | $294,700 |
|    Dwelling Extension  up to | $ 29,470 |
| B  Personal Property | $221,025 |
| C  Loss of Use | Actual Loss Sustained |

25. Based upon the language of the Policy, State Farm is obligated to pay actual cash value for destruction to the Residence until such time as reconstruction of the Residence occurs (if at all), at which time State Farm is obligated to pay additional sums to cover full replacement cost of the Residence.

26. State Farm has failed to pay any sums pursuant to the Dwelling Coverage provisions of the Policy for which it is obligated.

8

27. State Farm has failed to provide for Loss of Use of the residence. It is obligated, pursuant to the terms of the Policy, to maintain Mr. Williams' standard of living for up to 24 months. State Farm has failed to make any such payments for which it is obligated.

28. For all the foregoing reasons, State Farm is obligated to pay its insured, Mr. Williams, actual cash value or replacement cost for the Residence and for loss of use of the Residence.

### III. BREACH OF CONTRACT

29. Plaintiff re-alleges and incorporates by reference each and every averment of paragraphs 1-27 herein, inclusive.

30. The Policy issued by State Farm is a binding contract supported by valid consideration.

31. State Farm is in material breach of the Policy. Specifically, State Farm's breach of contract includes, without limitation: (a) State Farm's failure and refusal to pay amounts owed to Plaintiff for destruction to the Residence caused by the Loss; (b) State Farm's failure and refusal to pay all amounts owed to Plaintiff for costs of debris removal associated with the Loss; (c) State Farm's failure and refusal to pay Plaintiff his additional living expenses associated with the Loss; and (d) State Farm's failure and refusal to pay such other amounts to Plaintiff as may be required under the Policy.

32. As a direct and proximate result of State Farm's breach of contract, Plaintiff has suffered compensable losses for amounts owed under the Policy.

33. State Farm is liable to Plaintiff for his losses.

34. State Farm's breach of contract was intentional, fraudulent, malicious, and/or reckless, therefore justifying an award of punitive damages. Specifically, State Farm intentionally, fraudulently, maliciously, and/or recklessly: (1) failed to effectuate a prompt and fair settlement of Plaintiff's claim when liability was reasonably clear; (2) refused and failed to conduct a reasonable, prompt, and fair investigation concerning the issues surrounding Plaintiff's claim for insurance proceeds; (3) unjustly refused and/or failed to pay Plaintiff's claim for its own financial preservation with no reasonable or justifiable basis; (4) ignored Plaintiff's claim for no valid reason whatsoever; (5) failed to treat Plaintiff's interests with equal regard to its own; (6) hired a second structural engineer after State Farm's claims investigator and Corum opined the Residence was a Total Losss; (7) failed and refused to respond to Plaintiff's demand for loss of use payment and commencement of demolition and reconstruction of the Residence; (8) failed and refused to pay Plaintiff's valid claim; (9) failed to provide any explanation whatsoever for its delay in claims handling; and (10) failed to timely investigate, scope, and estimate the Loss. State Farm knew, or reasonably should have known, Plaintiff was justifiably relying on the money and benefits due him under the terms of the Policy. Nevertheless, acting with conscious disregard for Plaintiff's rights and with the intention of causing or willfully disregarding the probability of causing unjust and cruel hardship on Plaintiff, State Farm

consciously ignored Plaintiff's valid claim and withheld monies and benefits rightly due Plaintiff. Plaintiff seeks and is entitled to punitive damages.

### IV. BAD FAITH

35. Plaintiff re-alleges and incorporates by reference each and every averment of paragraphs 1-33 herein, inclusive.

36. At all relevant times, the Policy was due and payable.

37. Plaintiff submitted a formal demand to State Farm for payment of losses pursuant to the Policy on or about August 13, 2015 (hereinafter, "Demand Letter"). See **Exhibit "2" attached hereto.**

38. More than sixty (60) days has passed since Plaintiff submitted the Demand Letter to State Farm.

39. State Farm refused to pay the claim pursuant to the Demand letter.

40. State Farm's refusal to pay the loss was made in bad faith.

41. As a direct and proximate result of State Farm's refusal to pay the Loss, Plaintiff has suffered additional expense, injury, and loss.

42. Plaintiff is entitled to the statutory penalty of twenty-five percent (25%) for State Farm's bad faith failure to pay for the loss.

**WHEREFORE,** Plaintiff, Timothy Williams prays for a Declaratory Judgment against Defendant, State Farm Fire & Casualty Co, ordering it to provide coverage for the Loss.

**WHEREFORE,** Plaintiff, Timothy Williams prays for an award of compensatory damages in an amount not less than THREE HUNDRED FIFTY THOUSAND DOLLARS AND 00/100 ($350,000.00) payable by Defendant, State Farm Fire & Casualty Co.

11

**WHEREFORE**, Plaintiff, Timothy Williams prays for an award of statutory penalties for Defendant, State Farm Fire & Casualty Co.'s bad faith failure to pay a valid insurance claim in an amount of not less than EIGHTY-SEVEN THOUSAND FIVE HUNDRED DOLLARS AND 00/100 ($87,500.00).

**WHEREFORE**, Plaintiff, Timothy Williams prays for an award of punitive damages for Defendant, State Farm Fire & Casualty Co.'s intentional, fraudulent, malicious, and/or reckless failure to pay a valid insurance claim in an amount of not less than ONE HUNDRED SEVENTY-FIVE THOUSAND DOLLARS AND 00/100 ($175,000.00).

**WHEREFORE**, Plaintiff, Timothy Williams prays that Defendant, State Farm Fire & Casualty Co. be required to pay his reasonable attorney's fees and costs incurred in bringing this action.

**WHEREFORE**, Plaintiff, Timothy Williams prays that a jury be empaneled to hear his cause.

**WHEREFORE**, Plaintiff, Timothy Williams prays for any and all other and additional relief the Court or a jury may award.

Respectfully submitted, this 16th day of October, 2015.

*Law Office of*
**JAMES W. FRIAUF, PLLC**

_____
JAMES W. FRIAUF (#027238)
6315 Clinton Highway
Suite 207
Knoxville, TN 37912
Tele: (865) 236-0347
Fax: (865) 512-9174
Email: james@friauflaw.com
Our File No.: 15-158

*Attorney for Plaintiff, Timothy A. Williams*

13

# COST BOND

I, Timothy Williams, as Principal, and Law Office of James W. Friauf, PLLC, as Surety, are held and firmly bound unto the Union County Chancery Court Clerk, for payment of all costs awarded against the principal. To that end, we bind ourselves, our heirs, executors, and administrators.

The Principal is commencing a legal proceeding in the Chancery Court for Union County. If the Principal shall pay all costs which are adjudged against him, then this obligation is void. If the Principal fails to pay, then the surety shall undertake to pay all costs adjudged against the Principal in accordance with Tenn. Code Ann. § 20-12-120, *et seq.*

PRINCIPAL: _____
Timothy Williams

SURETY: Law Office of James W. Friauf, PLLC

_____
James W. Friauf, Member